State Board of Health *v.* Diamond Mills Paper Co.

---

THE STATE, ex rel. THE BOARD OF HEALTH OF THE STATE OF NEW JERSEY,

*v.*

THE DIAMOND MILLS PAPER COMPANY.

[Filed March 29th, 1902.]

1. The act of 1899 (*P. L. of 1899 p. 73*) prohibiting sewage, factory refuse or other polluting matter being discharged or placed in any stream from which cities, towns, boroughs, townships, or other municipalities receive a water-supply for domestic use, above the point where such water is taken, and fixing a penalty for a violation thereof, and authorizing the state board of health to enjoin the continuance thereof by suit in the chancery court, is embraced within its title, which recites that it is "An act to secure the purity of the public supplies of potable waters in this state."

2. The statute is not subject to the objection that it is special and local, and therefore unconstitutional, as being a regulation of the internal affairs of towns and counties.

3. The statute is not in violation of the constitutional provision prohibiting special or local laws granting any corporation any exclusive privilege, immunity or franchise, as that provision only applies to private corporations.

4. The statute, though it includes a provision exempting from its operation municipalities discharging their sewage into rivers and streams, is not special and local legislation, though not applying to all municipalities, or to water in which sewage was lawfully flowing at the time of the act, the potability of the water being a sufficient basis of classification; and therefore the statute is valid, though passed without the giving of the public notice required by the constitution before the passage of special or local laws.

5. The statute authorizing the board of health to maintain a suit in the chancery court to enjoin a violation of the act, is not invalid, as being an

attempt to confer on the chancery court a jurisdiction which the legislature cannot confer on such court.

6. The statute is violated, so as to authorize an injunction at the suit of the board of health, if refuse placed in a river above the point where a city takes its water-supply pollutes the water at the place where it is placed in the river, though it does not pollute the water where the city water-supply is obtained.

*Mr. William M. Lanning,* for the complainant.

*Mr. John O. H. Pitney,* for the defendant.

STEVENS, V. C.

This is a bill filed in the name of the state, on the relation of the state board of health, for an injunction to prohibit the defendant from discharging its factory refuse into the Rahway river. The bill is filed under the fourth section of the act of 1899 (*P. L. of 1899 p. 73*) entitled "An act to secure the purity of the public supplies of potable waters in this state." The first section of the act provides as follows:

"No sewage, drainage, domestic or factory refuse, excremental or other polluting matters of any kind whatsoever, which either by itself or in connection with other matter, will corrupt or impair or tend to corrupt and impair the quality of the water of any river, brook, stream or any tributary or branch thereof or of any lake, pond, well, spring or other reservoir from which is taken or may be taken any public supply of water for domestic use in any city, town, borough, township or other municipality of this state, or which will render or tend to render such water injurious to health, shall be placed in or discharged into the waters * * * of any such river, brook, stream or any tributary or branch thereof or of any lake, pond, well, spring or other reservoir, above the point from which any city, town, borough, township, or other municipality shall or may obtain its supply of water for domestic use."

The proviso is that the section quoted shall not be held to apply to any municipality

"which at the date of the passage of this act has a public sewer or system of sewers, drains or system of drains, legally constructed under municipal or township authority discharging its drainage or sewage into such river," &c.

The act further provides that any penalty for a violation of the act (fixed at $100 for each offence) may be recovered before a justice of the peace in a summary proceeding in the name of the state or local board of health, or that the state board may institute in the court of chancery the injunction proceeding here under consideration.

Two things are conceded—*first,* that the defendant does discharge factory refuse into the Rahway river above the point from which the city of Rahway obtains its supply of water; *second,* that at the point where such supply is taken there is no visible or appreciable deterioration of the water, in so far as observation or chemical analysis can detect it. The distance between this point and the point where the refuse is discharged is six or eight miles.

It is contended that the act is unconstitutional—*first,* because its title is defective; *second,* because it is special and local, and *third,* because it attempts to confer upon the court of chancery a jurisdiction which it cannot exercise.

*First.* Giving the word "secure" the meaning of "guard" or "protect," which is one of its ordinary meanings, it seems to me that the title accurately expresses the object. The case is so obviously within the decision of the court of errors in *Johnson* v. *Asbury Park, 31 Vr. 427,* that discussion is unnecessary.

*Second.* It is next contended that the act regulates the internal affairs of towns and counties and is special and local in that regard. The law is not open to this objection. So far as I have to deal with it, it does not, through the instrumentality of municipal authority, regulate the internal affairs of towns and counties. The prohibition against impairing the waters of the state is imposed by the legislature itself and not by the municipalities. The subject-matter of the act concerns all the people of the state. Its execution is entrusted to a state board. It is true, as pointed out in *Bingham* v. *Camden, 11 Vr. 156,* and *Alexander* v. *Elizabeth, 27 Vr. 72,* that there is often conferred upon municipalities the power to legislate locally with respect to like subjects, and if the legislation were of this character it would have to conform to the constitutional provision under consideration; but if, as in the case in hand, the legislature

8

chooses to exercise the power itself, it is not, at least, fettered by this restriction.

It is further insisted that the act violates that provision of the fundamental law which declares that the legislature shall not pass special or local laws granting to any corporation, association or individual any exclusive privilege, immunity or franchise. This provision, as I understand the decisions, applies only to private corporations. *Pell* v. *Newark, 11 Vr. 76, 77.*

The constitution provides that no private, special or local bill shall be passed unless public notice of the intention to apply therefor and of the general object thereof shall have been previously given. As to this provision, the legislature, in conformity with the power expressly conferred upon it, has declared (*Rev. Stat. p. 3197 § 50*)

"that the publication of any law in the pamphlet laws published by the state shall be *prima facie* evidence that the notice required by the constitution has been duly granted."

This law has been so published, and there is no proof that notice was not given. *Freeholders* v. *Stevenson, 17 Vr. 173.*

But aside from this objection, I think the law is neither special nor local within the meaning of this clause. The subject dealt with is the maintenance of the purity of the now existing supplies of potable waters. It is urged that the act is objectionable because it exempts from penalty municipalities which, at the date of its passage, have legally constructed sewers discharging their sewage into rivers and streams; that it is, therefore, special because its prohibitions act upon some municipalities and not upon others, and local because it exempts from its operation parts of some streams, viz., those into which sewage is now flowing. The argument, of course, goes to this extent, that the legislature has no power, except by private, local or special bill, of which notice is given, to preserve the waters of the state in their present condition of purity, without exacting the impossible requirement that all water courses from their source to their mouth shall be hereafter kept pure and potable. I think that waters which either are or, under existing law, ought to be pure and potable, may properly be put into a class by themselves. I think further

that, having regard to the geography of the state and the short-
ness of its water courses, the potable waters of the state·may be
properly classified as those which are above the points of lawful
sewage discharge and the non-potable as those which are below
such points.   There is always a possibility that the germs of
disease and epidemic may be present in streams and waters of
the·latter class, however much the sewage and drainage may be
diluted, and it is reasonably certain that even if in some cases
conditions may be improved, the waters below the points of
present discharge will never regain their original purity.   As to
the class of potable waters, the prohibition binds all alike.

On the principle on which the courts have heretofore acted it
·would seem therefore that the potable waters of the state may
be classified together as a proper object of legislation.   Their
marked characteristics is their potability, and the legislation has
reference to this characteristic and tends to perpetuate it.   The
legislation is within the long line of cases in which it is held
that where the classification is founded upon a substantial differ-
ence it is good.   *Benson* v. *Bloomfield, 29 Vr. 497.*

It is next contended that the legislature cannot vest this court
with jurisdiction over this matter.   All it has done is to give an
alternative remedy by injunction.   That the legislature may
direct the exercise of the injunction power by this court in a
new class of cases, to which the remedy is appropriate, seems to
me clear.   The legislature not infrequently extends the jurisdic-
tion of courts both of law and of equity to new cases, and it as-
signs them to the one court or the other, in conformity with the
remedy each is accustomed to administer.   Extensions of the
remedy given by the Mechanics' Lien and Attachment acts afford
familiar illustrations of new cases brought under the jurisdic-
tion of the supreme and circuit courts, and the acts to secure the
payment of laborers employed upon works of public improve-
ment (*Delafield Construction Co.* v. *Sayre, 31 Vr. 449*) ; the
act to compel the determination of claims to estates in remainder
(*Haley* v. *Goodheart, 13 Dick. Ch. Rep. 368;* affirmed on ap-
peal), and the act of 1896 giving the attorney-general the right
to apply for an injunction against delinquent corporations to
aid the state in collecting its taxes (*American Surety Co.* v.

*Great White Spirit Co., 13 Dick. Ch. Rep. 526*) are instances of an added jurisdiction conferred upon the court of chancery. In the case in hand it must be conceded that the exercise of the injunction power is an appropriate remedy to attain the end in view, viz., the prevention of the pollution of potable waters.

It is true that heretofore the rule in equity has been not to exercise its jurisdiction to restrain nuisances unless a serious public injury has been shown to exist—an injury not remediable in the ordinary tribunals. *Grey* v. *Greenville and Hudson Railroad Co., 14 Dick. Ch. Rep. 387.* The reason is that the remedy at law has been found adequate. Here, however, we are dealing, not with the jurisdiction ordinarily exercised by this court, but with a jurisdiction conferred by statute. To deny the constitutional validity of the act is to assert that the legislature cannot afford what is undoubtedly an appropriate remedy for a new and threatening wrong; that it may indeed punish, but that it cannot prevent. The line of cases to which I have referred seems to me to be a complete answer to this contention. It is no uncommon thing for the court, at the instance of the attorney-general (public interests being affected), to restrain corporations from exceeding their powers, even though no actual injury is shown. *Grey* v. *Greenville and Hudson Railroad Co., 14 Dick. Ch. Rep. 387;* affirmed on appeal on this point in *17 Dick. Ch. Rep. 768; Attorney-General* v. *Cockermouth Local Board, L. R. 18 Eq. Cas. 172; Attorney-General* v. *Shrewsbury Bridge Co., 21 Ch. Div. 752.* These cases prove that where the state is concerned the presence of actual injury is not an essential element of chancery jurisdiction—an element without whose presence the court is powerless to act. If this be true in one class of cases, I see no reason why in an analogous class, requiring a like remedy, the legislature may not provide it. I take it that whether the representative of the state shall be the attorney-general or the state board of health is a matter for the determination of the legislature alone.

The case of *State* v. *Wheeler, 15 Vr. 88,* is an express authority to the effect that legislation like this is not within the constitutional prohibition against taking private property for public use without compensation.

The next question is whether the defendant has, in fact, violated the provision of the act. What does the act prohibit? It is first to be noted that what is prohibited may be something less than a nuisance ordinarily so called. The provision is that

"no  *  *  *  factory refuse  *  .*  *  which, either by itself or in connection with other matter, will corrupt or impair or *tend* to corrupt or impair the quality of the water of any river  *  *  *  from which is taken or may be taken any public supply of water for domestic use in any city  *  *  *  or which render or *tend* to render such water injurious to health *shall be placed* in the waters of any such river  *  *  *  above the point from which any city  *  *  *  shall or may obtain its supply of water for domestic use."

The language here used is plain and unambiguous. The prohibition is against placing in the water of the river *anywhere* above the point from which the city obtains its supply any factory refuse which will either impair or tend to impair its quality.

If, at the place of discharge, the factory refuse put into the river impairs it, or even tends to impair it, the prohibited act is done. On this branch of the case, also, *State* v. *Wheeler, 15 Vr. 88,* seems to be directly in point. The defendant was indicted for polluting the waters of a brook used to supply a reservoir. The act under which the indictment was framed provided that if any person should throw or cause or permit to be thrown into any reservoir or into the waters of any creek, pond or brook, the waters of which were used to supply any reservoir, any offal or offensive matter whatever *calculated* to render said waters impure, he should be guilty of a misdemeanor. Mr. Justice Magie said: "The question turns on the meaning and relation of this clause, viz., 'calculated to render said waters impure.' What waters are thereby intended—those of the reservoir, where waters are collected for distribution for public use, or those of the creek, pond or brook which supply such reservoir. The grammatical connection of the clause is only consistent with the latter meaning.  *  *  *  .The whole act plainly shows a design to protect from pollution the waters of creeks used as the feeders for reservoirs for public use without any reference to whether such pollution appreciably affects the waters when arrived at the reservoir." The act now under consideration is quite as explicit on this head.

State Board of Health *v.* Diamond Mills Paper Co.

I do not understand that there is any question made by defendant that the purity and potability of the waters of the river are impaired at the point of discharge. It is contended that the solids held in suspension in the water, as it passes out of the raceway into the river, soon sink to the bottom, leaving the water as pure as it was when it entered the mill; but it is not seriously pretended that the waste water, at the point of discharge, is either pure or potable. The bottled samples demonstrate that it is not.

It would seem plain, then, that an injunction should issue. The city of Rahway is not shown to have been injured, but this is a bill filed, not by the city of Rahway, which is not a party, but by the state board of health. I cannot better state the design of such a statute as that under which the board of health is proceeding than by quoting from Sir George Jessel, master of the rolls, in *Attorney-General* v. *Cockermouth Local Board, L. R. 18 Eq. Cas. 172,* a case to which I have already referred: "The defendants are a public body authorized by act of parliament to construct sewage works so that they shall not be a nuisance. Under the powers originally conferred on them they could not make outfall works outside their district, but a subsequent act of parliament authorized them to go outside. They may now take people's lands. * * * But these powers are subject to this proviso: Provided always, that nothing herein contained shall give or be construed to give powers to any local board to construct or use any outfall, drain or sewer for the purpose of conveying sewage or filthy water into any natural water course or stream until such sewage or filthy or refuse water be freed from all excrementitious or other foul or noxious matter such as would affect or deteriorate the purity and quality of the water in such stream or water course. I do not mean to say that clause might not, by possibility, have been better drawn, but I think the meaning is pretty plain and it means this: 'You shall not send your sewage into a natural stream until you have made it wholesome water—until you have got rid of all the noxious matter in it.' That, I think, is the effect of the clause, and, if that is the meaning, the next point is, what water is it that is not to be affected or deteriorated? You are not to affect or deteriorate the water in the river; what

portion of the water? I cannot accede to the argument of the defendants that it merely means that you must not poison the whole river. For a river may be hundreds of miles long. I think it must mean that you are not to affect or deteriorate the water in the river at the point where the outfall is; and that if you, at that point, pollute the water, you shall not enjoy the privilege given you by the act of parliament of making an outfall outside of your district. * * * Then this is an information by the attorney-general against a public body to enforce the terms of a public act of parliament. Now, if I understand the law upon this subject, it is not necessary for the attorney-general to show any injury at all. The legislature is of the opinion that certain acts will produce injury and that is enough. The case I have already referred to of the *Attorney-General* v. *Oxford, Worcester and Woolverhampton R. W. Co., 2 W. R. 333,* is in point. There the attorney-general would not even answer the affidavits of defendants to show there was no injury caused by the proceedings they were adopting. The legislature is of opinion that it is desirable to preserve our streams in at least their present state of purity. It therefore has said you shall not affect or deteriorate the water at all, and that the court must assume that the deterioration of the water is an injury which is prohibited for good and sufficient cause. Again, if I look at the evidence in the case, I can see very good reason for the course adopted by the legislature. We had the evidence of scientific men to this effect, that there is always a probability of danger when sewage matter is thrown into a stream, because people may drink of that stream, and if an epidemic disease is prevalent in a town from which the sewage matter proceeds, that disease may be communicated to the inhabitants of another. Well, that alone would be sufficient justification for the legislature, if it entertained that opinion, inserting this enactment in the act of parliament. That being so, I think I am bound, as regards the information, to grant an injunction to restrain the defendants infringing the provisions of the act of parliament."

I am of opinion that the board of health is entitled to an injunction.