ROBERT AVERY v. VERMONT ELECTRIC CO., et al.

October Term, 1902.

Present: ROWELL, C. J., TYLER, MUNSON and STAFFORD, JJ.

Opinion filed March 6, 1903.

*Eminent domain—Flowage act—Public use—Riparian rights*
*—V. S. c. 159.*

To entitle one to invoke the power of eminent domain provided in V. S. c. 159, the use to which the water power is to be applied must be a public use within the meaning of the Constitution; and the conditions which make the use a public one must exist at the time of the taking.

The generation of electricity by an individual, for the purpose of supplying a railroad with power to operate its road, is not such a public use.

Flowage rights cannot be acquired under V. S. c. 159 on the theory that that chapter is a mere statutory regulation of the rights common to riparian owners.

PETITION under V. S. c. 159. Heard on Vermont Electric Co.'s motion to dismiss, at the September Term, 1902, Chittenden County, *Start,* J., presiding. Motion sustained, and petition dismissed as to that defendant. The petitioner excepted.

*Edmund C. Mower* for the petitioner.

Two questions are raised for consideration. (1) Is the application of water power, developed by the raising of a dam as contemplated by chapter 159 of the Vermont Statutes, to the operation of a railroad by electricity, a public benefit justifying the exercise of the right of eminent domain under the so-called flowage acts? (2) If not, are said acts constitutional as involving a legitimate legislative control over the common rights and interests of riparian owners?

The operation of the railroad is a public benefit. *Williams* v. *School District,* 33 Vt. 271. The term "public use" should receive a liberal construction, and should not be made to depend upon whether the entire community, or any considerable part of it, may directly enjoy the benefits of it. *Talbot* v. *Hudson,* 82 Mass. 417; *In re Gas Light Co.,* 63 Barb. 437; *In re Whitestown,* 53 N. Y. 397; *Allen* v. *Joy,* 60 Me. 140. This case is distinguishable from *Tyler* v. *Beacher,* 44 Vt. 648.

The fact that the legislature has provided for the exercise of the right of eminent domain for the purposes specified in these acts, while not controlling, raises a presumption in favor of the public character of the uses specified. *Rensselaer* v. *Leopold,* 106 Ind. 29; *Welton* v. *Dickson,* 38 Neb. 767; *Beekman* v. *Railroad Co.,* 3 Paige, 73; *Hazen* v. *Essex Co.,* 12 Cush. 475; *Talbot* v. *Hudson,* 16 Gray, 417; *Stewart* v. *Supervisors,* 60 Ia. 9.

If it be considered that the only ground upon which the petitioner may enjoy the benefit of the flowage acts is that he apply his water power to railroad purposes only, such application would be the condition on which he would hold his privileges; and a violation of such condition would work a surrender. 10 Am. & Eng. Ency. 1203; *Wood* v. *Mobile,* 107 Fed. 846; *Proprietors* v. *Railroad Co.,* 104 Mass. 1; *Baird* v. *Hunter,* 12 Pick. 555.

It is objected that while the ultimate end sought by the petitioner may be a public benefit, he shows no necessary connection between that end and the means he seeks to adopt. *Eldridge* v. *Smith,* 34 Vt. 484, is relied upon. We insist that necessity is a question of fact, and is, in the first instance, for the determination of the commissioners. But absolute necessity is not required. *Railway Co.* v. *Harvey,* 178 Ill. 477;

*District* v. *Brandon,* 103 Cal. 384; *Mining Co.* v. *Corcoran,* 15 Nev. 146; *In re Railway Co.,* 52 L. R. A. 879.

Public use is synonymous with public benefit or advantage. *Mining Co.* v. *Seawell,* 11 Nev. 394.

The fact that the petitioner intends to lease the power to another is immaterial. *Company* v. *Manufacturing Co.,* 35 Conn. 496.

The acts in question are sustainable, on well established principles of law, as a legitimate statutory regulation of the enjoyment of common rights by riparian owners. *Head* v. *Amoskeag Mfg. Co.,* 113 U. S. 9, and cases cited. Note to *Allen* v. *Inhabitants of Jay,* Am. Law Reg., August, 1873; *Jones* v. *Skinner,* 61 Me. 25; *Waddy* v. *Johnson,* 5 Ired. 333; *Lowell* v. *Boston,* 111 Mass. 454; 154 Mass. 579; *Wurts* v. *Hoaglald,* 114 U. S. 606; *Coster* v. *Tide Water Co.,* 3 C. E. Green, 54; 32 Ind. 169.

*W. L. Burnap and A. G. Whittemore* for the defendant.

The necessary prerequisite of "public use" is wanting. 1 Lewis Em. Dom. 158, 180, 238; *Tyler* v. *Beacher,* 44 Vt. 648; *In re Barre Water Co.,* 62 Vt. 27.

The test is, will all persons, upon demand, be served by the party who claims to be fulfilling a public purpose, and can such demand be enforced? *Scudder* v. *Company,* 1 N. J. Eq. 694; 44 Vt. 648.

The statute is unconstitutional. *In re Barre Water Co., supra; Trout & Salmon Club* v. *Mather,* 68 Vt. 338.

MUNSON, J.   The petition alleges that the petitioner is the owner in trust of a certain mill property on the Winooski river, and that he desires to raise to the height of fifty feet a dam now existing on said property, and proposes to use the

water-power so provided in generating electricity for the operation of the Burlington and Hinesburgh railroad; shows further that the raising of this dam will flow the lands of other owners, and that the petitioner is unable to agree with them as to the damages they will sustain; and prays that he may be permitted to raise said dam, and for the appointment of commissioners to ascertain the damages caused thereby. It was moved that the petition be dismissed because it did not appear from the allegations that the flowage would be a public benefit, or such a public benefit as would warrant the taking under the Constitution. The County Court sustained the motion. No objection is taken as to the manner in which the question is raised.

It is provided in chapter 159 of the Vermont Statutes that one who desires to set up or continue a mill or manufactory on his land, and to erect or continue or raise a dam to obtain water therefor, and thereby flow the lands of another person, may secure the right to do so in the manner there provided, if commissioners appointed for that purpose, or the Court itself, shall find "that the flowing of the land as proposed will be of public benefit." For the purposes of this discussion, it will be assumed, without consideration, that a plant for the generation of electricity, is a manufactory within the meaning of the statute.

The first question for consideration, as stated by the petitioner, is whether the application of water-power to the generation of electricity for use in the operation of a railroad is such a public benefit as will justify an exercise of the right of eminent domain under the provisions of this chapter. But this statement of the inquiry is hardly broad enough for our purpose; for this assumes that the statute names a constitutional ground of condemnation, and proposes to test the peti-

tioner's right by inquiring whether his case is within its terms. A more accurate statement of the question would be, whether this is a public use within the meaning of the Constitution; for no finding of public benefit under the statute can avail, unless the statute and the constitutional provision are brought together by construction.

The argument of the petitioner is an earnest plea for a liberal construction of the term "public use." It is evidently considered that the term "public benefit" is a better expression of what is meant, and cases are cited where it is said that "public use" is synonymous with that term. We are also referred to the utterance of this Court in *Re Barre Water Company,* 62 Vt. 27, 20 Atl. 109, 9 L. R. A. 195, where it is said that the power of condemnation "must have some degree of elasticity, that it may be exercised to meet the demands of new conditions and improvements, and the ever-varying and constantly increasing necessities of an advancing civilization." It is urged that the use of electricity has become so important to the prosperity and development of the State that the utilization of our water-powers for its production ought to be regarded as a public necessity.

We have in the petitioner's brief an extended presentation of the views expressed by other Courts in dealing with the question of public use. In considering these opinions, it must be remembered that some States have constitutional provisions much broader than ours, and that even a slight variation of expression may be influential in determining the line of decision. It is true, nevertheless, that some of the cases cited proceed upon grounds that afford support to the petitioner's contention. In fact, the reasoning of some of them comes dangerously near the argument that it is for the public benefit to have property of this character in the hands of those who will put

it to the best use, and that the refusal of an obstinate or grasping owner to part with his property ought not to be allowed to block the wheels of progress. It is needless to say that arguments of this character can have no weight in the determination of cases arising under the Constitution of this State.

Our only decision upon the flowage law is found in *Tyler* v. *Beacher,* 44 Vt. 648, 8 Am. Rep. 398. It was there held that the owner of a grist-mill who was under no obligation to grind for the public, could not flow the lands of another to increase his power, for the reason that the use was private. It is said by the petitioner that that case is opposed to the decisions of most of the States which have passed upon the question, and this is true. But we find nothing in the arguments of other Courts that leads us to question its soundness, and have no disposition to recede from it. A review of the adverse line of decision will be found in Lewis on Eminent Domain, sections 178-181. This author considers that mills which are not required by law to serve the public, while they may be a public benefit, are not a public use within the meaning of the Constitution, and says that the circumstances under which the contrary decisions were made may explain, but do not justify them.

But it is said that the purpose of this condemnation is to provide motive power for a railroad, and that the railroad is unquestionably a public servant. Treating the case as if the application were by the railroad company itself, the reasoning of this Court in *Eldridge* v. *Smith,* 34 Vt. 484, is decidedly against the right. The distinction between taking the land necessary for the road, and the taking of property for use in the production of the means to be employed in carrying it on, is there clearly pointed out. But it is not necessary to resort to an application of this doctrine, for the reason of the decision

in *Tyler* v. *Beacher* is controlling here. If the petitioner's purpose were found to be as alleged, this would not meet the requirement.   It is true that the railroad must serve the public, but there is nothing that binds the petitioner to serve the railroad.   And if we look to some direct service of the general public, there is nothing that binds the petitioner to give equal advantages to all.   The suggestion that a failure in this respect would work a forfeiture does not remove the difficulty. The conditions which make the use public must exist at the time of the taking.

We have thus far considered the statute upon the theory that it was designed to give the right of eminent domain to every riparian owner for the maintenance of a mill or manufactory of public benefit.   This was the view formerly taken of the mill act of Massachusetts; but the more recent doctrine of that State is that the provision is not an exercise of the right of eminent domain, but a statutory regulation of rights common to the riparian owners.   It is insisted that the petition can be sustained on this ground.

The doctrine referred to is claimed to be analogous to that upon which provision is made for the partition of land held by several tenants in common.   The different owners of the bed and banks of the stream are treated as having a common interest in the reasonable use of the flowing water.   It is said that one reasonable use of the water is the use of the power inherent in the fall of the stream, that this power cannot be used without damming the water and causing it to flow back, and that one man may own the fall, and another the land which it is necessary to flow.   The Courts of Massachusetts hold that the Legislature may secure the full value of the stream to the different owners by combining these two inter-

ests for use, and compelling the owner of the flooded land to take his share in money. This doctrine is apparently approved by Judge REDFIELD in his note to *Allen* v. *Inhabitants of Jay* in the American Law Register for August, 1873, and sanctioned by the Supreme Court of the United States in *Head* v. *Amoskeag Mfg. Co.,* 113 U. S. 9, 28 L. Ed. 889.

We cannot adopt this view. It seems to assume that the land goes with the stream, instead of the stream with the land, and to give the riparian owners a joint interest in the land because of their peculiar rights to the water. But the owners of the various properties are the several and independent owners of their respective parcels of land, and their only right to the water is such as this ownership gives them. To say that one's holding of the land is subservient to such use as the lower owner may desire to make of the water, is to reverse all our theories regarding the use of streams. It is true that in *Johns* v. *Stevens,* 3 Vt. 308, Judge PRENTISS seems to assume that it would be within the power of the Legislature to encourage the building of mills by a statute of this character. But in *Adams* v. *Barney,* 25 Vt. 225, where the right of the owner of one side of the stream to maintain a dam across it was involved, Judge REDFIELD said that the land on the opposite side was the defendant's, and that the plaintiff had no right to use it, and that no Court or Legislature had the power to give him the right. This certainly excluded the idea of an acquirement of mill-privileges through a statutory regulation of riparian rights.

It should be noticed, also, that the argument advanced in support of the statute as thus classified is not co-extensive with the right given. The argument is based upon the existence of a common interest in the stream, while the statute applies to all flowable lands. A dam of mod-

erate elevation may flood the land of one whose premises are not contiguous to the stream, and who consequently has no interest in it. The maintenance of the petition upon the ground last urged would amount to a holding that all private lands in the State that can be flowed by the highest practicable dams are held subject to the full utilization of the streams upon which they lie. The Massachusetts Court supports its position by holding that the mere flowing of land is not a taking of the property, a conclusion which we are not ready to adopt. We think Mr. Lewis is right in saying that appropriations of this character cannot be sustained without virtually expunging the words "public use" from the Constitution.

*Judgment affirmed.*

