COMMUNITY CHAUTAUQUAS, Inc., v. CAVERLY et al.

(District Court, D. Vermont. July 28, 1917.)

1. HEALTH ⬤⇒11—REGULATIONS BY BOARDS OF HEALTH—REVIEW BY COURTS.

Regulations made by a state board of health under legislative authority may be reviewed by the courts only upon the question of their reasonableness, and if a responsible, honest, and presumably reasonable body of professional opinion is found on the side of the regulation, it must be upheld.

2. CONSTITUTIONAL LAW ⬤⇒117—HEALTH ⬤⇒21—OBLIGATION OF CONTRACTS —POLICE POWERS OF STATES.

A regulation promulgated by a state board of health, composed of physicians from different localities in the state, prohibiting "fairs, Chautauquas, street carnivals or circuses" until further notice, when based on the professional opinion of the members of the board that such gatherings are likely to cause the spread of infantile paralysis, is a reasonable regulation within the police powers of the state, and not invalid as in violation of the constitutional provision against impairment of the obligation of contracts, although its effect may be to prevent the performance of contracts.

3. CONSTITUTIONAL LAW ⬤⇒63(2)—LEGISLATIVE POWERS—DELEGATION TO LOCAL AUTHORITIES.

Laws 1917, Vt., c. 194, authorizing local health officers to "forbid and prevent the assembling of people in any place where the state board of health deems that the public health and safety so demand," *held* not unconstitutional as a delegation of lawmaking powers.

In Equity. Suit by the Community Chautauquas, Incorporated, against Charles S. Caverly and others. On motion for preliminary injunction. Denied.

Motion to continue restraining order and for preliminary injunction. Action to restrain the enforcement of an order of the board of health of the state of Vermont, order dated July 17, 1917, and directing that "no fairs, Chautauquas, street carnivals or circuses be held in the state of Vermont until further notice."

Plaintiff owns and gives that form of entertainment known as a Chautauqua, and has made a large number of contracts to give such entertainments in the state of Vermont during the present summer season. This order of the board of health prevents all persons from attending these performances and so in effect prevents the performances themselves. It has been assumed by the parties that the order in question not only does this, but terminates the contracts themselves, or so abrogates them as to inflict upon plaintiff a

---

total loss of the amounts expended in preparing to give said entertainments in pursuance of said contracts. It was admitted that the reason for the order of the board of health was, and is, as set forth in the order itself, to wit, a belief that "large general gatherings of people * * * have distributed" the infection of infantile paralysis. It was not alleged in the bill, nor urged in argument, that the defendants (who are all the health officers in the state in regions in which it was intended to hold chautauquas) were actuated by any malice or intended, wantonly or otherwise, to injure plaintiff, but solely by their own opinion of what is desirable from a sanitary and prophylactic standpoint.

Dunnett & Shields, of St. Johnsbury, Vt., for plaintiff.
Herbert G. Barber, Atty. Gen., for defendants.

HOUGH, Circuit Judge (after stating the facts as above). The sole ground of jurisdiction set up in this bill is diversity of citizenship, and the prayer of the bill is that defendants "be restrained from making or enforcing any order designed to prevent the performance of the contracts" of plaintiff to give chautauquas in Vermont. The reason of the bill and this prayer is that the order in question "unjustly discriminates against the plaintiff and against the entertainments to be given by the plaintiff." It appears from argument, however, that the discrimination complained of is not thought to rest upon any personal prejudice against plaintiff or its entertainments, but upon the proposition outlined in the bill, asserted in affidavits, and presented in argument, that public gatherings induced by an intellectual entertainment such as a chautauqua do not tend to spread infection, and that such is the opinion of some doctors.

[1] Thus the question primarily presented to this court is whether the professional opinion of a board of doctors, honestly exercised, shall be overturned by the chancellor on the ground that it is "unreasonable." It is said that State v. Speyer, 67 Vt. 502, 32 Atl. 476, 29 L. R. A. 573, 48 Am. St. Rep. 832, upholds this view. Undoubtedly there are cases (and the case cited is one of them) wherein police regulations cannot be held justifiable "unless there are reasonable grounds for a belief that the necessary protection of the public health" requires their passage. This is a simple doctrine, and means no more than that it is the duty of the court to examine into the facts of every case, and if a responsible, honest, and presumably reasonable body of professional opinion is found on the side of the regulation, it is the duty of the court to uphold it, even though the chancellor should entertain the view of professional dissidents.

The point is not whether the court agrees with the professional conclusion of a body of doctors, or engineers, or clergymen, but whether it is evident that the professional view is a reasonable view for men of the proper profession to entertain. They may be wrong, but is there any reasonable probability of their being right? If that question is answered in the affirmative, the professional regulation cannot be said to be unreasonable, as a matter of law. This is the view taken in State v. Morse, 84 Vt. 387, 80 Atl. 189, 34 L. R. A. (N. S.) 190, Ann. Cas. 1913B, 218, and the whole matter is covered by the remarks of Holmes, J., quoted, at page 397, from Laurel Hill Cemetery v. San Francisco, 216 U. S. 358, 30 Sup. Ct. 301, 54 L. Ed. 515.

I am therefore not called upon to come to any conclusion as to whether the propagation of poliomyelitis is actually assisted by crowds, but I am persuaded: (1) That a very responsible body of professional opinion is that way; (2) that the Vermont board of health shares that view; (3) that it has just as much right to entertain that view as I have to entertain an opinion upon a point of law; and (4) that such a point of view cannot be held to be unreasonable.

[2] Although the bill does not in terms rest upon any constitutional point, such point is necessarily presented. Thus the bill prays to have certain contracts preserved—preserved from what? From an exercise of the police power of the state in accordance with a responsible body of professional opinion. An act of the Legislature thus impairing a contract is not unconstitutional. Manigault v. Ward (C. C.) 123 Fed. 707, affirmed 199 U. S. 473, 26 Sup. Ct. 127, 50 L. Ed. 274. That the prevention of disease, or its spread, by any means based on responsible medical opinion is a competent and constitutional exercise of police power is a proposition so plain as scarcely to require citation. The Legislature might have said that there should be no gatherings at all except by license (Davis v. Commonwealth, 167 U. S. 43, 17 Sup. Ct. 731, 42 L. Ed. 71), and discrimination or classification is frequently based, not on medical opinion, but merely on matters of taste. Of this perhaps the best illustrations are the "Ice Cream Cases," of which Hutchinson Ice Cream Co. v. Iowa, 242 U. S. 153, 37 Sup. Ct. 28, 61 L. Ed. 217, Ann. Cas. 1917B, 643, is the latest so far as I know. That the board of health acted within its statutory authority is, I think, plain from chapter 194, Vermont Laws of 1917, which explicitly authorizes local health officers (such as most of the defendants herein) to "forbid and prevent the assembling of people in any place, when the state board of health deems that the public health and safety so demand."

[3] This is not a delegation of lawmaking authority, for the Assembly laid down the law, but intrusted its application to medical men who would presumably be better informed as to local conditions. If this matter be regarded as one of local law, only cognizable in the United States courts because of diversity of citizenship, I think the matter fairly within the ruling in State v. Morse, supra; if (looking beyond the form of pleading) other questions be considered, no constitutional rights of plaintiff have been invaded. Therefore the application cannot be granted, a result the more willingly reached because the papers presented (especially the results of poliomyelitis observations in Vermont for some years past) conclusively show to me that the moves of this mysterious disease are so little understood that any honest medical efforts to effect its extermination should meet with assistance rather than hostility.

The restraining order is dissolved, and preliminary injunction denied.

A motion to amend the bill was made at the hearing, and no objection made thereto. If the form of the amendment is transmitted to me through the clerk of court, it will be formally allowed so far as can now be seen.