### Anchor Hocking Glass Corp. et als v. F. Elliott Barber, Jr., Attorney General, et als

[105 A2d 271]

February Term, 1954.

Present: **Sherburne, C. J., Jeffords, Adams and Chase, JJ., and Sylvester, Supr. J.**

Opinion Filed May 4, 1954.

*Wilson & Keyser* and *Leslie Henry* [of Toledo, Ohio] and *George Adams Ellis* [of Counsel] for the plaintiff.

*F. Elliott Barber, Jr.,* Attorney General, *Robert T. Stafford,* Deputy Attorney General, and *Frederick Reed* [of Counsel] for the defendants.

**Jeffords, J.** This is a petition for a declaratory decree and judgment that No. 33 of the Acts of 1953 is unconstitutional for the reason that it is in conflict with the provisions of Articles 1, 7 and 9 of Chapter 1 of the Constitution of this State and of §1 of the 14th Amendment to the Constitution of the United States. An injunction is asked to permanently restrain the defendants from enforcing or attempting to enforce the statute.

The plaintiffs are grouped in two classes. The first consists of glass container manufacturers all of which are corporations having their principal places of business outside of

Vermont. The second group or class is composed of persons or corporations engaged in the business of wholesaling beer or ale in this state. All of this latter group have their principal places of business in Vermont and are duly licensed to engage in such business.

The defendants are law enforcement officers generally, or public officials having to do in one way or another with the laws pertaining to the sale of intoxicating liquors in this state.

A demurrer was filed to the bill of complaint. A hearing was had and as a result a decree, pro forma, was entered sustaining the demurrer and dismissing the bill and the cause was passed to this Court before final judgment or decree for hearing and determination of the exceptions allowed the plaintiffs to the decree.

§1 of No. 33 is as follows: "*Prohibitions.* The sale of beer or ale in nonreturnable glass containers is hereby prohibited." By §2 a penalty is provided for a violation of the act.

The allegations in the bill are rather lengthy and numerous. Those which we deem to be of a factual nature and pertinent are summarized as follows: The plaintiffs in the first group, prior to the passage of the act and the order made thereunder, sold large quantities of the containers designated in the act to brewers who packaged beer and ale therein and made sales thereof for resale in Vermont. Prior to the effective date of the statute, nonreturnable glass containers were used in large volume in Vermont as packaging for beer and ale. In 1941, 43.9% of the beer and ale sold in this country was in individual packages, and by 1952 this percentage was 74.7%. In Vermont the proportion so sold has been greater than in the nation as a whole. In 1941 the part so sold was 75.2% and in 1952 it was 85.4%.

Originally the only package used was the returnable glass container. For many alleged reasons, nonreturnable containers were developed. This container is more than strong enough for one use but is lighter than the returnable bottle.

The returnable glass containers are relatively heavy bottles. They are strongly built for repeated use, and are refilled on an average of about 20 times. Brewers and wholesalers require a deposit against the return of the bottles and the

retailers are required to and do require deposits by their customers.

The glass container manufacturers have spent large sums of money in various ways for the manufacture of the containers in question and in advertising and promoting the use and sale of the same. These activities have resulted in general public acceptance and constantly increased use of these containers and particularly in Vermont.

On a national basis, the quantity of beer and ale packaged in nonreturnable glass containers increased from about 1.3 million barrels in 1947, to nearly 3.5 million barrels in 1952. In the latter year about 4.2% of all beer and ale was sold in these containers. In Vermont, the increase in use of such containers has been far greater than in the nation as a whole. In 1952, at least 40% of the sales of packaged beer and ale was in these containers.

Various benefits accrued to the plaintiffs in the second group from the increase in the business of selling beer and ale in such containers and this class of business has generally been more profitable to them than that of selling in returnable bottles. There was also an increase in the sale of beer and ale in metal containers in Vermont, but the predominant consumer demand was for the nonreturnable glass containers.

After the passage of the act, the Vermont Liquor Control Board ordered all wholesalers to cease the purchase of beer and ale in such latter containers for resale in this state. This order has been complied with.

Beer and ale may be legally sold in Vermont in other containers and in other ways. Various commodities and products in nonreturnable glass containers and in nonreturnable containers made of other materials are sold without legal restrictions.

Nonreturnable glass containers are so manufactured as to be entirely safe for the packaging of beer and ale and for handling in distribution channels and by the consuming public. Such containers are sanitary and are filled and packaged by methods which insure a sanitary package. The statute has brought about an increase in the importation of beer and ale in such containers from adjacent states by consumers.

The statute does not serve to eliminate litter from the highways or adjacent lands. Litter along the highways and adjacent lands includes other kinds of glass bottles and other containers made of glass and other materials and various other articles. The presence of nonreturnable bottles for beer and ale among the litter on the highways or adjacent lands did not result in any greater injury to persons or property than other forms of litter.

The statute and its enforcement have destroyed the market of the plaintiffs in the first group in the sale of these containers to brewers for packaging beer and ale for sale in Vermont and have prevented competition with manufacturers of nonreturnable metal containers for the Vermont market, to the injury and damage of the property and business of these plaintiffs.

As a result of the act, the plaintiffs in the second group have been required to handle larger quantities of beer and ale packaged in other kinds of containers so that the sale of beer and ale in such other containers has greatly increased to the great expense of these plaintiffs. The statute has caused loss of profits to these plaintiffs in one way or another.

So popular is such container with Vermont consumers that those of these plaintiffs who sell beer and ale for distribution near the borders of the state are, by reason of the statute, losing sales which were formerly made to Vermont consumers to competitors located across the borders of the state.

The defendants say that neither of the groups of plaintiffs has a right to maintain this action for a declaratory decree or judgment under our Uniform Declaratory Judgments Act, V. S. 47, ch. 77. The pertinent sections of the Act are as follows: §1630. "A person * * whose rights, status or other legal relations are affected by a statute, * * * may have determined any question of construction or validity arising under the * * * statute * * * and obtain a declaration of rights, status or other legal relations thereunder." §1640 states that the purpose of the chapter "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations and is to be liberally construed and administered."

The main ground in support of this claim, as stated by the defendants, is that "to be entitled to maintain a declaratory action, a plaintiff must have a right or interest in the thing affected by the challenged statute, and that the plaintiffs here do not have such a right or interest in the thing affected, the liquor traffic, as entitles them to challenge its validity." Other grounds are advanced.

We do not deem it necessary to discuss and determine whether any of these grounds are valid. For the purposes of this case, we assume that the plaintiffs are entitled to take advantage of the act and to have their claim of unconstitutionality of the statute in question considered and determined.

In their briefs the plaintiffs set forth four broad grounds in support of their claim. These grounds are: 1. To be valid the act must be a proper exercise of the police power. 2. The act has no relation to any proper purpose for the exercise of the police power. 3. The statute is unreasonably discriminatory. 4. The statute is unreasonably arbitrary, harsh and oppressive and goes beyond the necessities of the case.

The language in the opinion in *State* v. *Auclair*, 110 Vt 147, appearing on pages 160 and 161, 4 A2d 107, 113, 114, is so pertinent to these grounds that we quote it in full, omitting citations of authorities.

> "The equal protection clause of the Fourteenth Amendment does not prohibit legislative classification and the imposition of statutory restraints on one class which are not imposed on another. The State possesses a wide discretion in exercising this phase of its police power with the qualification that the classification must not be purely arbitrary or irrational, but based upon a real and substantial difference, having a reasonable relation to the subject of the particular legislation. "A particular classification is not invalidated by the Fourteenth Amendment merely because inequality actually results. Every classification of persons or things for regulation by law produces inequality in some degree; but the law is not thereby invalidated * * * unless the inequality produced be actually and palpably

unreasonable and arbitrary." The burden of proving that a legislative classification is essentially arbitrary and rests upon no reasonable basis is upon the party who asserts it, and it will not be declared invalid 'unless viewed in the light of facts made known or generally assumed, it is of such a character as to preclude the assumption that the classification rests upon some rational basis within the knowledge or experience of the legislators. A statutory discrimination will not be set aside as the denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it.' This is the same principle that has been applied in cases involving classification for the purpose of taxation.

"What has been said applies to the claim that the statute is repugnant to Ch. 1, §§7 and 9, of the Constitution of Vermont. The first of the above sections provides that 'government is, or ought to be, instituted for the common benefit, protection and security of the people, nation or community, and not for the particular emolument or advantage of any single man, family or set of men who are a part only of that community.' In cases in which a violation of this provision has been asserted, it has been repeatedly recognized that, in the exercise of the police power of the State, a legislative classification that is not arbitrary or irrational may be established. And as far as the question of classification is concerned, the equality clause of the Fourteenth Amendment and the proportional clause of our Constitution are the same in effect. This is so whether the question is one of taxation or police power."

In *Vt. Salvage Corp.* v. *St. Johnsbury*, 113 Vt 341, 351, 34 A2d 188, 194, a case much relied upon by the plaintiffs, it is said: "The ordinance having been passed pursuant to this power [police] there must be an obvious and real connection between the section of the ordinance relating to the location of motor vehicle junk yards and one or more of the purposes for the application of the police power. The question is

then, does the prohibition of the location of such junk yards along the side or in plain view of a public traveled highway have any such connection."

In *State* v. *Haskell*, 84 Vt 429, 437, 79 A 852, 856, 34 LRANS 286, it is stated: "Is the classification based upon some difference having a reasonable and just relation to the object sought? This is the test by which, according to all the authorities, the question must be determined."

■ It is very apparent that one purpose of the statute is to minimize the danger of injury to travelers on the highways of this state and damage to their property and pecuniary damage to owners of property adjoining the highways. For this reason it was an act passed by the Legislature in the exercise of its police power. *State* v. *Quattropani*, 99 Vt 360, 362, 363, 133 A 352.

For a determination of whether the facts here show the required connection between the statute and this purpose for the application of the police power, it is well to review some of the pertinent alleged facts. Prior to the effective date of the statute nonreturnable glass containers were used in large volume in this state as packaging for beer and ale. In Vermont the proportion of beer and ale sold in individual packages was greater than in the nation as a whole. In 1952 the part so sold was 85.4%. In that same year at least 40% of sales in this state of packaged beer and ale was in nonreturnable glass containers. There was an increase in the sale of these beverages in metal containers but the predominant consumer demand was for nonreturnable glass containers. The presence of such containers among the litter on the highways or adjacent lands did not result in any greater injury to persons or property than other forms of litter. These containers are more than strong enough for one use but are lighter than the returnable bottles. These latter bottles are strongly built for repeated use and are refilled many times. Deposits are required against the return of these bottles.

■ These facts show a large and increasing sale of ale and beer in these containers and their presence among the litter on the highways and adjacent lands to the injury of

persons and property. This, no doubt, was known by the legislators. It is reasonable to believe that, being aware of these facts, they took steps by the passage of the act to effect a substantial reduction in the number of the articles among the litter and reduce to that extent the danger resulting therefrom. See in this connection *Vt. Salvage Corp.* v. *St. Johnsbury, supra*, at page 348, 34 A2d 188. The fact that there were other kinds of litter not covered by the act is no reason for declaring it invalid. *Grown* v. *Cleveland*, 128 Ohio St 455, 181 N. E. 897, 84 ALR 708. The legislators well may have found that these containers because of their number, construction and the likelihood of their being thrown away when empty, having no return value, caused special danger of injury and damage. See *State* v. *Haskell*, 84 Vt 429, 440, 79 A 852, 34 LRANS 286.

It is clear that the facts show an obvious and real connection between the statute and the purpose for the application of the police power and that the classification is based upon a difference having a reasonable and just relation to the object sought.

■ The established rule is that every presumption is to be made in favor of the constitutionality of an act of the Legislature and it will not be declared unconstitutional without clear and irrefragable proof that it infringes the paramount law. *State* v. *Auclair, supra*, at page 156. There is here no proof that the statute is arbitrarily discriminatory as claimed by the plaintiffs.

What we have already said disposes of the major claims of unconstitutionality made by the plaintiffs. There are various other claims which we note lest it be thought that they have been overlooked.

It is stated in their main brief that the act cannot be upheld on the ground of protection or improvement of the appearance of the highways, citing *Vt. Salvage Corp* v. *St. Johnsbury, supra*. Assuming, without deciding, that aesthetic considerations entered into the reasons for the passage of the statute, it is shown on page 352 of the case that this fact will not invalidate it where other elements within the scope of the police power are present.

■ It is claimed that the statute is invalid because the remedy of destruction of plaintiff's business is unduly harsh, arbitrary and oppressive. The answer to this claim is stated in *State* v. *Harrington*, 68 Vt 622, at 637, 35 A 515, 520, as follows: "It must be conceded that the requirements of this law are oppressive upon the class of persons known as itinerant vendors, in respect to the deposit of $500.00 and in the payment of a license fee in each town where business is transacted. But the question is not whether the law is oppressive or unjust, but whether it contravenes any provision of the state or federal constitution. If it does not, the court has no right to declare the act void, for the Constitution alone is the boundary power of the legislature." None of the cases cited by the plaintiffs in support of this claim conflict with this statement of the law. Nor is there one in which the statute in question has passed the tests for constitutionality but has been held invalid because its enforcement would result in the destruction of a useful and legitimate business. It would seem that there would be a stronger reason for not so holding in the case of a liquor business which is conducted not as a matter of right but as a granted privilege. *Billado* v. *Control Comm'rs*, 114 Vt 350, 354, 45 A2d 430.

It is said that the business of the plaintiffs should not be destroyed because of wrongful acts of others or difficulty of enforcing existing laws against littering. The answer to this is that destruction does not result for these reasons but from a valid police measure.

It is argued that as there are already statutes prohibiting litter, V. S. 47, §§3772 and 5186, there was no reason for further law in that field. They cite *State* v. *Dodge*, 76 Vt 197, 56 A 983, in support of that claim. The holding in that case of unconstitutionality of the statute in question was not based on that ground. Morever, the statutes therein referred to specifically prohibited what it was necessary to show was forbidden by the statute in question. Such is not the case here.

The plaintiffs rely largely on *State* v. *Scampini*, 77 Vt 92, 59 A 201. That case is not factually in point and was one involving a statute which was clearly arbitrarily discriminatory.

The defendants rely to a large extent on the Twenty-first Amendment to the Constitution of the United States in support of their claim of validity of the statute. Since, in our opinion, there is merit to this claim we deem it worth while to consider·it.

§2 of the Amendment is as follows: "The transportation or importation into any State, Territory or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." The defendants claim that this Amendment and the cases construing it control the case at bar. The cases relied upon in support of this claim are *State Board of Equalization* v. *Young's Market Co.*, 299 US 59, 57 S Ct 77, 81 L. Ed 38; *Mahoney* v. *Triner Co.*, 304 US 401, 58 S Ct 952, 82 L Ed 1424; *Indianapolis Brewing Co.* v. *Liquor Control Comm.*, 305 US 391, 59 S Ct 254, 83 L Ed 243; *Finch & Co.* v. *McKittrick*, 305 US 395, 59 S Ct 256, 83 L Ed 246 and *Knall Beverage Co.* v. *Taylor*, 68 Ohio App 263, 39 NE2d 179.

The plaintiffs say that the four Supreme Court cases are wholly in accord with their position. That each deals only with the right of a state to discriminate against imported liquor and it was held that the power to prohibit imports included the power to discriminate against imports. They maintain that the Amendment removes only federal constitutional protection as to import of liquors and that the statute here involved applies to all sales within the state without reference to import. They claim that the entire effect of the Amendment is that stated in *Ruppert* v. *Morrison*, 117 Vt 83, at page 90, 85 A2d 584, 589, as follows: "The 21st Amendment confers upon the state the power to forbid all importations which do not comply with the conditions which the state prescribes. *State Board of Equalization* v. *Young's Market Co.*, 299 US 59, 57 S Ct 77, 81 L Ed 38; Anno., 138 ALR 1150, 1151. It relieves the states of the limitations of the commerce clause on their powers over the transportation or importation of intoxicating liquors."

The claim of the plaintiffs appears to be, in effect, that for a statute to come within the purview of the Amendment, as shown by the cases, it must contain the words "import"

or "importation." The question is whether the plaintiffs are correct in their view.

True it is, that in three of the cases from the Supreme Court, supra, the statutes in question forbade the importation of intoxicating liquors into the state. However, in the Indianapolis Brewing Co. case, supra, a so-called "retaliatory" case, the statute prohibited dealers in Michigan from selling any beer manufactured in a state which by its laws discriminated against beer brewed in Michigan. In that case the holdings in respect to the Amendment made in the first two of the Supreme Court cases, supra, were followed and applied to the Michigan statute.

The facts in the Knall Beverage case are much in point with those here. In that case the Board of Liquor Control of Ohio passed a regulation providing that no beer could be sold in that state except in packages of designated sizes. A seven ounce bottle was not included therein. It was claimed that this regulation violated rights of the plaintiff under the Federal Constitution. The plaintiff was a licensed dealer in beer in Ohio which had a large sale of beer in seven ounce bottles imported from Michigan. The court in disposing of this claim says: "Justice Brandeis in the Young Market case [which had theretofore been referred to] observes, 'Surely the state may adopt a lesser degree of regulation than total prohibition.' We think this effectually disposes of the claim that there is any violation of the federal prohibition." It is clear from what was previously said that "federal prohibition" was used as a synonymous term for "Federal Constitution."

The cases relied upon by the defendants support their claim as to their holdings. Pertinent passages from the Mahoney case are as follows: "That, under the Amendment discrimination against imported liquor is permissible although it is not an incident of reasonable regulation of the liquor traffic was settled by *State Board of Equalization* v. *Young's Market Co.* * * * * The claim that the statutory provisions and regulations are void under the equal protection clause may be briefly disposed of. A classification recognized by the twenty-first amendment cannot be deemed forbidden by the Fourteenth."

■ ■ It is clear from the holdings in the Indianapolis Brewing case and the Knall case that it is not necessary that a statute contain the words "import" or "importation" to come within the purview of the Amendment. It is seen from the alleged facts that all of the ale and beer packaged in these nonreturnable containers is imported into this state. It follows that the statute in question does not violate the 14th Amendment.

It is not necessary to rely entirely on the Indianapolis Brewing case and the Knall case to support our position on this phase of the present case. Certain rules of statutory construction are hereby applicable.

■ In the interpretation of statutes the fundamental rule is to ascertain and give effect to the intention of the Legislature. *State* v. *Baldwin,* 109 Vt 143, 148, 194 A 372. If it can fairly be done, a statute must be so construed as to accomplish the purpose for which it was intended and a construction leading to an absurd consequence must always be avoided if possible. *Brammall* v. *Larose,* 105 Vt 345, 349, 350, 165 A 916. The intention of the Legislature constitutes the law and what is implied in a statute is as much a part of it as what is expressed. *State Highway Board* v. *Gates,* 110 Vt 67, 73, 1 A2d 825. We apply these rules to the statute in question.

We have seen that all of the ale and beer packaged in nonreturnable glass containers is imported into the state. It is a matter of common knowledge that no ale or beer for legal sale is brewed in Vermont. It is reasonable to believe that the Legislature had this fact in mind at the time of the passage of the act. We have also seen that one of its purposes was to minimize the danger of injury to persons and damage to property. To accomplish this purpose the statute was enacted. In our opinion it was implied in it that no ale or beer be imported in such containers. Otherwise an absurd construction of the statute would result. If imports could still be made what beneficial results to anyone would follow if the ale or beer so packaged could not legally be sold? The wholesalers would not want this product as they could not legally sell it. If any were imported and sold, the sale could only be made illegally.

It is not to be supposed that the Legislature would lend its aid to the breaking of the law. For the reasons stated, it is clear to us that the Legislature intended by the passage of the statute not only to prohibit the sale of ale and beer in such containers but also to forbid their importation when so packaged.

As to the plaintiff's claim in respect to *Ruppert* v. *Morrison, supra,* it is sufficient to say that it correctly states the law applicable to the questions in that case. The effect of the 21st Amendment here in question was not there in issue. Nothing therein stated conflicts with what is herein held.

The plaintiffs say that even if the defendants are correct in their claim as to the 21st Amendment in respect to the 14th Amendment this would not dispose of the case as the suit is also grounded on state constitutional provisions. In *State* v. *Auclair, supra,* it is shown that the same tests as to constitutionality are applied to §§ 7 and 9 of our Constitution as are applied to the 14th Amendment. The plaintiffs advance no reasons why any different tests should be applied to §1 of the Constitution of this state. Since the tests as far as it has been made to appear, are the same, we know of no reason, and none has been advanced by the plaintiffs, why the 21st Amendment does not have the same effect in respect to our constitutional provisions as it does in respect to the 14th Amendment in cases involving the illegal transportation of intoxicating liquor into this state.

The plaintiffs say, apparently in support of their claim now under consideration, that if the Supreme Court had established any rule that the Twenty-first Amendment removed all constitutional protection from the liquor business, it would not have taken the trouble to pass on equal protection claims in *Ziffrin* v. *Reeves,* 308 US 132, 60 S Ct 163, 84 L Ed 128 and in *Goesaert* v. *Cleary,* 335 US 464, 69 S Ct 198, 93 L Ed 163. That Court does not consider that the 21st Amendment has taken away all protection provided by the 14th, nor do we hold that the law of the Scampini case, supra, and of other cases from this Court with similar holdings has been abrogated by the 21st Amendment.

However, it is not necessary to decide what effect, if any, this Amendment has on our constitutional provisions relied upon by the plaintiffs. We already have held under the phase of the case relating to police power that the plaintiffs have not shown that the act in question violates any of such provisions.

The plaintiffs say that the matter of importation of beer and ale is specifically covered by other statutes, V. S. 47, §§6124 and 6199. They argue that because of this, the act cannot be regarded as directed towards imports. They again cite *State* v. *Dodge*, 76 Vt 197, 56 A 983, in support of this claim. §6124 does not apply to beer and ale. §6199 is so different in many respects from a statute merely prohibiting such importation that we cannot say there was no occasion for its enactment.

The reasons and grounds for our holdings make it unnecessary to consider other points briefed and argued by both sides.

*The decree of the chancellor sustaining the demurrer and dismissing the bill of complaint is affirmed.*