## Vermont Woolen Corp. v. John J. Wackerman et als

[167 A.2d 533]

November Term, 1960

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed January 6, 1961

*Monti & Free* for the plaintiff.

*Louis P. Peck,* Legal Assistant to the Attorney General, for the petitionees.

**Barney, J.** The Vermont State Water Conservation Board on December 12, 1957, held a hearing in connection with classification of the waters of a certain Kingsbury Branch watercourse as authorized by 10 V.S.A. §§905 and 907. The plaintiff corporation, a riparian property owner and user of the waters of Kingsbury Branch in its operations, was notified of the hearing and appeared, objecting to the proposed classification. Thereafter, plaintiff received in the mail an order from the board defining the present condition of Kingsbury Branch as below Class D and setting up a classification to be reached by pollution abatement of Class C. This order contained the following provision relating to abatement of pollution:

"Note No. 3—Private sewer systems to receive proper disposal by septic tanks and leaching lines or other approved means by 1 January 1959. Municipal sewage systems—plans and specifications shall be prepared and submitted to the Water Conservation Board for approval by 1 January 1959. Industrial wastes systems —plans and specifications for treatment facilities to be submitted to the Water Conservation Board by 1 January 1959 or alternate disposal of wastes not involving discharge to watercourse in operation by same date. Gravel washing plants shall have adequate settling lagoons prior to 1958 operations. Stream bank dumps to be abandoned and cleaned up or covered in an approved manner by 1 January 1959."

Kingsbury Branch is a tributary of the Winooski River, which in turn empties into Lake Champlain.

Within thirty days of the issuance of the order, in accordance with the appeal procedure set out in 10 V.S.A. §908, the plaintiff brought an action in chancery alleging itself aggrieved by the classification order.

At the hearing before the chancellor no evidence was taken. The parties seem to have sought to raise the issues of the constitutionality of the statutory authority under which the board acted and the constitutionality of the actions of the board. To this end the board agreed to allow the chancellor to treat the allegations of the bill as true for the purpose of such a test, with the reservation that the board was to be allowed to plead over in the event the ruling of the chancellor was reversed in this Court. The chancellor, after getting the parties to agree to the questions to be presented, incorporated them in an order dismissing the bill for failing to set forth grounds of equitable relief. Were it not for the entry of judgment this would appear to be a discretionary certification of questions to this Court prior to final judgment under 12 V.S.A. §2386. It now stands in effect on an appeal from a judgment sustaining a demurrer to the bill, a situation apparently not entirely in accordance with the intentions of the parties. In other circumstances this might have prevented review of the very questions sought to be raised. Perhaps it is not of great moment in this case, but we point these things out in order to urge counsel to follow orderly procedure in presenting their questions for review where circumstances permit, in order to avoid the risk of having an appeal fail to reach the issues vital to the controversy.

■ The order of the board sought to be vacated by these chancery proceedings directly affects the plaintiff. It is, therefore, a proper party to raise the question of the constitutionality of the legislation involved and of the actions of the board. See *Clark* v. *City of Burlington,* 101 Vt. 391, 412, 143 A. 677; *State* v. *Haskell,* 84 Vt. 429, 441, 79 A. 852, 34 L.R.A., N. S. 286.

In 10 V.S.A. §902 are defined, in terms of purity, the various water classifications used in the statutes relating to water pollution. By the language of the definitions Class D is water so polluted as to fail as a habitat for wild life and common food and game fishes indigenous

to the region; waters polluted beyond a Class D status contain sewage or industrial waste to the point of nuisance. Class D waters are so impure as to be unsuitable for irrigation of crops or other agricultural uses. Class C, while a suitable habitat for fish and wildlife, is too polluted for recreational bathing or for public water supply even with filtration and disinfection. Its only acceptable agricultural use is for irrigation of crops that are cooked prior to consumption. Class B is free enough of pollution to allow its use for bathing and aquatic recreation, for general irrigation and agricultural purposes and, with filtration and disinfection, for public water supply. Class A is water so free from any pollution as to be suitable for all purposes, including public water supply.

The legislature itself has determined the classification of certain waters by the provisions of 10 V.S.A. §903. All waters used as public reservoirs and waters flowing into them are Class A. Natural lakes and ponds of twenty acres or more wholly within the state and the waters flowing into them shall be Class B, unless such classification is objected to by ten property owners on such pond or lake, in which case the board may, after hearing, classify it differently. The statute goes on to make classification of the remaining waters of the state, including determination of what degree of purity ought to apply and be maintained, the function of the water conservation board. 10 V.S.A. §901 defines "pollution" as "the placing in the waters of the state by whatever means of any noxious or deleterious substance which renders such waters harmful to animal or aquatic life, or to use for industrial purposes or for recreation."

The plaintiff attacks the constitutionality of these water pollution statutes on several grounds. In the first instance, it is asserted that since the board is directed merely to furnish notice of a proposed restriction of a river or stream "using whatever means it deems proper" (10 V.S.A. §907) the possibility of inadequate notice being permissible under this language renders the act unconstitutional. No claim of lack of proper notice in this particular case is made.

A legislative enactment has the benefit of every presumption in favor of constitutionality, including the selection of a constitutional construction, if reasonable, over an unconstitutional one. *Elliott* v. *Fish and Game Commission,* 117 Vt. 61, 68, 84 A.2d 588. The burden

of producing clear and indisputable proof rests on one alleging unconstitutionality. *State* v. *Auclair,* 110 Vt. 147, 156, 4 A.2d 107.

Notice is a vital essential in any proceeding having the aspects of an adjudication. *Thompson* v. *Smith,* 119 Vt. 488, 507, 129 A.2d 638. However, entire lack of notice is not the issue raised here, since the use of the compelling directive "shall furnish notice" in 10 V.S.A. §907 requires the board to provide notification. The plaintiff contends that there is no guarantee of reasonable notice in the statute. This position requires the unwarranted assumption that the legislature intended to authorize unreasonable notice when only reasonable notice has legal effect. *Nichols Electric Co., Inc.* v. *Fienberg,* 101 Vt. 99, 103, 141 A. 679. Proper construction of the statute qualifies "notice" with "reasonable." *Sabre* v. *Rutland R.R. Co.,* 86 Vt. 347, 366, 85 A. 693. Even though the actual notice given by the board in a particular instance may be open to challenge on review, this Court will not strike down a statute as unconstitutional for failing to spell out in words a fundamental requirement of due process implicit in a meaningful use of the word "notice." To do so would violate the very rule of construction set out in *Elliott* v. *Fish and Game Commission, supra.* 117 Vt. 61, 68, 84 A.2d 588.

The legislation in question here is concerned with promoting the public welfare (10 V.S.A. §915) by providing the maximum of beneficial use and enjoyment of the waters of the state to its people. 10 V.S.A. §903 (3). Reference to the classifications of water purity previously described demonstrate that pollution abatement is to be carried out in furtherance of public health and for the protection of fish and game. Both of these purposes have already been recognized as areas appropriate for the exercise of the police power. See *State* v. *Quattropani,* 99 Vt. 360, 133 A. 352; and *State* v. *Theriault,* 70 Vt. 617, 41 A. 1030, 43 L.R.A. 290.

As is said in the Quattropani case, the police power is not limitless, even though it be but another name for sovereignty itself. It is subject to judicial review to test the reasonableness and appropriateness of the legislation to accomplish the result intended without oppression or discrimination. *State* v. *Morse,* 84 Vt. 387, 394, 80 A. 189, 34 L.R.A., N.S. 190. Except for this limitation, it

is for the legislature to determine what measures are appropriate and necessary to conserve and safeguard the public safety, health and welfare. *State* v. *Quattropani, supra,* 99 Vt. 360, 363, 133 A. 352. As that case states, all contracts entered into, all charters granted, all rights possessed and all property held are subject to the proper exercise of this police power, and must submit to its valid regulations and restrictions. The determination of validity is the function of the courts.

The specific objective is to require those who contribute to pollution in our streams to take steps to reduce or bring to an end such pollution as they may be responsible for. Nothing brought forward by the plaintiff disputes the clear and reasonable relationship of the statutory program in question to the legislative objectives. Nor has there been a demonstration of an infringement upon constitutional rights by the requirements of the statutes. The claim of the plaintiff is that if it is required to correct its sewage and industrial waste problem, the cost of doing so will be so high as to be confiscatory of its whole business operation. Whether that circumstance, if true, invalidates the exercise of police power in this kind of situation is not now before us, but see *Aitken* v. *Wells River,* 70 Vt. 308, 40 A. 829, 41 L.R.A. 566, and *Anchor Hocking* v. *Barber,* 118 Vt. 206, 215, 105 A.2d 271.

The statutory provisions which could order plaintiff to undertake such a pollution-reducing program have not yet been brought into play. They are 10 V.S.A. §§911 and 912; they call for the fact of pollution to be proved by evidence introduced at a hearing for that purpose with an opportunity for the plaintiff to defend. In addition, these sections provide that pollution abatement measures will not be required if the cost of installation, maintenance and operation thereof are unreasonable or inequitable. Not only would it appear that plaintiff is raising these issues of confiscation prematurely, but also that the legislature has forseen the problems of difficult pollution situations and taken steps to avoid unreasonably burdensome enforcement of these statutes.

█ The plaintiff contends that since the legislation under examination makes specific references to particular water uses such as industrial, agricultural and recreational, it betrays an intent to legis-

late for private purposes and thereby violates Article 7 of Chapter I of the Constitution of Vermont. This position overlooks the fact that the indicated uses are merely part of the descriptions of the various standards of purity and not an assignment of any water or water rights to any individual. The right to use the water for particular purposes, such as industrial or agricultural uses, is not one acquired through these proceedings, but such rights must be held as riparian rights have heretofore been held. Moreover, it is axiomatic that statutes in furtherance of the public welfare generally must simultaneously confer varying benefits upon individuals. So long as the public purpose is paramount and the enactment reasonably related to that purpose, the statute is not made invalid thereby. *State* v. *Auclair, supra,* 110 Vt. 147, 160-161, 4 A.2d 107.

■ As a related point, plaintiff complains that it is unfair discrimination and a burdensome inequality to require it to pay the full cost of abating its own pollution when other members of the community and other riparian owners will share the benefits. To state the proposition is to expose its weakness. Manifestly, there is nothing unfair in requiring one who contributes to the creation of a detrimental situation to be responsible for its correction to the extent of his contribution. See *Western Union Tel. Co.* v. *Burlington Traction Co.,* 90 Vt. 506, 99 A. 4; *Bacon* v. *Boston & Maine R.R.,* 83 Vt. 421, 76 A. 128; and *Thorpe* v. *Rutland & Burlington R. Co.,* 27 Vt. 140.

■ This Court recognizes that riparian rights constitute property and has said so in *State* v. *Morse,* 84 Vt. 387, 392, 80 A. 189, 34 L.R.A., N.S. 190. However, the claim that such rights can become by prescription invulnerable to regulation cannot be allowed to pass unchallenged. It is a proposition that runs counter to the doctrine of the primacy of the police power or sovereignty for the protection of the welfare of the public expressed in *State* v. *Quattropani, supra,* 99 Vt. 360, 363, 133 A. 352. Without the consent of the legislature, the interests of the State in all of its waters cannot be defeated by long user, for prescription cannot be allowed to overcome public welfare. 2 C.J.S. Adverse Possession, §11, p. 523; and see *Adams* v. *Town of Derby,* 73 Vt. 258, 260, 50 A. 1063..

■ Although a particular statute may be constitutional, the manner in which authority is exercised under it may infringe on constitutional rights. *Clark* v. *City of Burlington,* 101 Vt. 391, 411, 143 A. 677. It is the plaintiff's claim that the order of the board made in this case was unconstitutional in that compliance with its provisions would deprive the plaintiff of its property without compensation.

Part of plaintiff's objection is concerned with installing industrial waste control alleged to be so expensive as to amount to confiscation of its property. But the present order does not direct any such installation. As was pointed out previously, the plaintiff has failed to distinguish the board's action here under the classification provisions of 10 V.S.A. §908 and possible future proceedings in connection with specific pollution under 10 V.S.A. §§911 and 912. This litigation is concerned with an order under section 908 only. For the same reason, plaintiff's complaint that this order does not specify the particular system or means to be used in controlling industrial waste is not relevant to these proceedings.

The plaintiff objects to the provision of the order that requires it to install septic tanks for the houses it owns and the provision requiring the submission of plans and specifications of treatment facilities for its industrial wastes. Alleging that the expense of all this would be burdensome to the plaintiff, it claims that the expenses of furnishing plans and specifications would, by themselves, amount to thousands of dollars. This, says the plaintiff, clearly establishes the unreasonableness of the order as applied to it. Therefore, even as an application of the police power, says the plaintiff, the order is unconstitutional.

■ The legislature has determined the basic necessity of such pollution abatement, and the courts are bound by that finding. *In re Guerra,* 94 Vt. 1, 8, 110 A. 224, 10 A.L.R. 1560. Enactments for the protection of public health are favored in the law, *State* v. *Morse, supra,* 84 Vt. 387, 394, 80 A. 189, 34 L.R.A., N.S. 190, and the preservation of hunting and fishing privileges is given special attention in the state constitution. Vt. Const. Ch. II, §63.. Under the circumstances, this legislation has strong policy support, as do orders made in proper implementation of it.

■ Burdensome cost is a factor to be considered in weighing the reasonableness of legislation and orders made under it when test-

ing them for constitutionality. However, when the legislation is, as here, supported by strongly favored policy considerations, neither legislation nor orders will be struck down as unreasonable solely because a financial hardship is necessarily worked on a particular individual, even to the point of being destructive of his business. *Anchor Hocking* v. *Barber, supra.*

The order is also attacked by the plaintiff as being arbitrary and uncertain, and as furnishing no standard whereby the plaintiff can determine the differences between the several classifications referred to in the order. It is claimed that it fails to inform the plaintiff as to what fault must be corrected with respect to disposal of its industrial wastes. The question is whether the legislature has fixed a primary standard for this administrative body clear enough to serve as a guide to the duty to be performed by those subject to regulation. *State* v. *Auclair, supra,* 110 Vt. 147, 163, 4 A.2d 107.

This order is not an adjudication that some regulation or law has been violated by the plaintiff or anyone else. Rather, it is in the nature of the promulgation of a regulation forbidding pollution of Kingsbury Branch, very like the regulations forbidding swimming and boating on Berlin Pond, as was the case in *State* v. *Morse, supra,* 84 Vt. 387, 391, 80 A. 189, 34 L.R.A., N.S. 190, and again in *State* v. *Quattropani, supra,* 99 Vt. 360, 362, 133 A. 352. In making regulations of this kind the board is not required to make findings, since its action is in no sense a judgment or appealable determination under 12 V.S.A. §2385. There is no condemnation or punishment for past acts of pollution; the order simply forbids such acts in the future. It further spells out certain acts that will be accepted as compliance. With respect to domestic sewage it is installation of septic tanks; with respect to industrial wastes, failure to discontinue pollution will be excused for the time being if plans and specifications descriptive of proposed industrial waste treatment are seasonably submitted to the board.

Otherwise, plaintiff, if it wishes to avoid being charged with polluting Kingsbury Branch, must cease dumping its wastes in that stream. The order recognizes the only two ways this can be carried out, *i.e.*, by disposing of the wastes elsewhere, or by clarifying the water used before returning it to the Branch. "Pollution" is defined in the statute; the duty under the order is clear and definite.

Plaintiff has no responsibilities with respect to determining the classification of Kingsbury Branch waters, and its subjective understanding or lack of it concerning the different classes of water purity is immaterial. The classifications relate to the purity of the stream water generally as measured by the board, not to the waste water discharged by plaintiff's operation, and are sufficiently reasonable and definite for that purpose. Proceedings informing the plaintiff as to any fault in its system of waste disposal are brought under 10 V.S.A. §§911 and 912, not under 10 V.S.A. §908, the provision under consideration here.

All this is made abundantly clear by the provisions of 10 V.S.A. §909. As we have seen, the proceedings now under review related to classification. After classification, §909 sets out the authority of the board in the following language:

"No person shall create, establish, cause or maintain any source of pollution not existing on or before June 1, 1949, or increase any source of pollution existing on or before such date, except through petition to the board and upon receipt from the board of written authorization so to do provided, that after the classification of any Vermont water has been established in accordance with the provisions of this chapter, the board may take action against any person who permits waste of such kind or quantity to enter such stream as by itself or in combination with wastes of other sources reduces the water below the classification set for it. However, the provisions of this chapter shall at no time be so construed as to affect the fertilization of fields or crops."

Plaintiff argues from a previous version of this statute that pollution existing prior to June 1, 1949, is exempt from all regulatory action by the board. Even assuming the argument was intended to apply to this statute, we cannot agree with his position. To read the statute in that manner would be to render the provisions of 10 V.S.A. §903, previously described, a nullity. The clear language of the statute allows the board to proceed against "any person," without exception, who pollutes waters after their classification. To read into the "provided" provision another exemption for pre-June 1, 1949, pollution is to strain the literal meaning of the statutory language and do violence to the statutory purpose.

There has been in the statutes an exemption for pre-existing pollution since No. 109 of the Acts of 1943. This act was amended by No. 148 of the Acts of 1949, which contained the following provision:

"6305. *Pollution.* No person shall create, establish, cause or maintain any source of pollution not existing on or before June 1, 1949, or increase any source of pollution existing on or before such date except through petition to the board and upon receipt from the board of written authorization so to do. However, the provisions of this chapter shall at no time be so construed as to affect the fertilization of fields or crops."

It is this version upon which the plaintiff bases its claim of exemption, because its activity admittedly existed prior to June 1, 1949. However, No. 131 of the Acts of 1951 changed the statute to its present form as previously set forth.

If it is to be said that the right of the board to take action is limited to pollution activity generated subsequent to June 1, 1949, the clause added in 1951 does not increase or even change the authority given the board by the 1949 version. To make the amendment meaningful, it must be that the legislature intended the exemption of pollution existing prior to June 1, 1949, would be effective only so long as the waters involved remained unclassified. Thereafter, all pollution by any person of the classified waters was subject to action by the board. That is to say, the exemption set out in the statute does not apply to waters once the board has carried out classification procedures as to them. We are bound to assign a purpose to the amendatory act and the construction we have adopted is plainly supported by the statutory language. *Conn* v. *Brattleboro,* 120 Vt. 315, 322, 140 A.2d 6. All intendments are adverse to the construction urged by the plaintiff, and we so hold.

There is a suggestion in the argument made in plaintiff's brief that the construction we have approved would have the effect of forever prohibiting any alteration of the disposition of all wastes with respect to a classified stream, even though circumstances might change. There are two factors that overrule this contention. The first is that provision is made under 10 V.S.A. §910 for petitioning the board with respect to projected changes in the sources of pollution. The second is the use of the permissive word "may" in lieu of some mandatory

term in connection with the enforcement provisions of 10 V.S.A. §909. Taken together, these two factors demonstrate an intent on the part of the legislature to leave the statutory mandate to the board flexible enough to permit it to adjust its enforcement to altering circumstances.

Although no objection was made at the hearing to the taking of testimony from witnesses who were not under oath, the plaintiff complains of it here by a passing reference in its brief. Without an objection below, there is no question here for review. 12 V.S.A. §2381; *Canfield* v. *Hall,* 121 Vt. 479, 483, 160 A.2d 768.

Plaintiff has demonstrated no constitutional deficiency in either the relevant statutes or the order of the board, nor has any error been made to appear in the proceedings. Its bill was properly dismissed.

*Judgment affirmed.*