### Vermont Board of Health v. Town of Waterbury

[274 A.2d 495]

No. 76-70

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed December 9, 1970

*James M. Jeffords,* Attorney General, and *George E. Rice, Jr.,* Assistant Attorney General, for the Vermont Board of Health.

*Adams & Meaker,* Waterbury, for Defendant.

**Barney, J.** On April 1, 1970, there was fire and smoke at the Waterbury dump. On that day a prohibition against open burning had gone into effect. The legal preliminaries to validate such a ban had been previously carried out, and all municipalities given several weeks notice of the effective date. The authority of the state board of health to promulgate such a regulation was given to it by the legislature in the provisions of the so-called "Air Pollution Control Act," now 10 V.S.A. §§ 351–70.

That law made the state board of health the air pollution control agency. 10 V.S.A. § 353. Under 10 V.S.A. § 358 that agency was empowered to establish, "such emission control requirements, by rule, as in its judgment may be necessary to prevent, abate, or control air pollution." 10 V.S.A. § 352 defines "emission" as a release into the outdoor atmosphere

of air contaminants and the definition of air contaminants includes dust, fumes, mist, smoke, other particulate matter, vapor, gas, odorous substances or any combination thereof.

The Vermont Health Regulations relating to air pollution, under Subchapter II, prohibit open burning. Under section 5-421 of this subchapter, the purpose of the regulation is to prevent, abate and control air pollution caused by air contaminants discharged into the air by open burning of combustibles. The approach has three aspects: first, under section 5-423, open burning is generally banned, subject to certain exceptions; second, under 5-424 certain kinds of open burning are permitted as exceptions to the ban; third, certain burning is allowed under waiver from the state board of health. The pattern of the regulation is primarily to prohibit large-scale burning of waste, trash, garbage and rubbish, permitting it only where the prospect for harm is minimized, or other methods of waste disposal cannot be complied with. The regulation applies to municipalities, and Waterbury obtained no waiver and came under no exemption.

On April 3, 1970, a complaint was brought by the air pollution control agency, the state board of health, against Waterbury for allowing the open burning of refuse at its dump on April 1. A hearing was had before the board, findings made and a judgment order issued. This order imposed no penalty, but required that the town restrict access to the dump area to scheduled hours, extinguish any fire that might start as soon as possible, make a reasonable effort to insure that no fires are started on the dump site by covering all exposed materials every twenty-four hours and by such other means as it finds feasible to insure that fires will not be started, and to notify the Division of Industrial Hygiene of the Department of Health of its plans for implementation of these duties. This last requirement is based on section 5-412 of the regulations.

This result is attacked by the defendant town on the broad ground that the regulation in question is invalid as arbitrary and unreasonable, outrunning the legislative purpose and exceeding the limits of the statutory directive. In support of its position, the town cites the condemnation of a health regulation as overbroad in *State* v. *Speyer,* 67 Vt. 502, 32 A. 476 (1895).

The *Speyer* case involved a state-wide regulation of the state board of health, made in 1892, forbidding the building or maintaining of pigpens within one hundred feet of any street, inhabited house, or well or spring of water used for drinking purposes. Antecedent legislation gave the state board of health authority to promulgate and enforce regulations for the better preservation of the public health in contagious and epidemic diseases, as related to the causes tending to their development and spread. The regulation was struck down as of unreasonable breadth.

The Court said, at 67 Vt. at 507:

"It reaches beyond the scope of necessary protection and prevention into the domain of restraint of lawful business and use of property. It is founded on fear and apprehension of a remote possible danger to the public health, and not upon its existence, or upon reasonable grounds to apprehend that any considerable portion of the pig pens affected by it endanger or will endanger public health."

That case provokes several comments. Perhaps the first and most important is to note that it specifically recognizes the regulatory authority of the legislature: "All property in the state is, undoubtedly, held subject to the reasonable supervision of legislative authority, to an extent necessary to the reasonable preservation of the public health." *State* v. *Speyer, supra,* 67 Vt. at 504.

This critical and necessary power has been a matter of continuing recognition in the decisions of this Court. *Board of Health* v. *St. Johnsbury,* 82 Vt. 276, 282–83, 73 A. 581 (1909); *State* v. *Morse,* 84 Vt. 387, 393, 80 A. 189 (1911); *State* v. *Quattropani,* 99 Vt. 360, 362, 133 A. 352 (1926). *Vermont Woolen Corp.* v. *Wackerman,* 122 Vt. 219, 224–25, 167 A.2d 533 (1961). Again, it is recognized in each of these cases that it is the function of the courts to examine the regulations and the underlying legislation for its reasonable relationships to the end sought and its avoidance of unwarranted infringement on constitutional rights. *State* v. *Speyer, supra,* 67 Vt. at 504, *Vermont Woolen Corp.* v. *Wackerman, supra,* 122 Vt. at 224. Such orders are presumptively valid, have been exercised in an area, public health, where the police power

properly operates and can be validly delegated. *State* v. *Quattropani, supra,* 99 Vt. at 362.

Looking back at the *Speyer* case, which came down at a time when the germ theory of disease was still a recent concept, a laudable demand that the necessity for drastic curtailment of current practices be more fully demonstrated is understandable. Yet given the background of general knowledge possessed by courts and citizens today, the result reached in that case would be incomprehensible. The lesson seems plain that, in reviewing measures for the preservation of public health and, indeed, for the protection of the ability of humankind to survive, more regard must be had for the cumulative consequences of human activity. We are just commencing to understand that we are beginning to suffer the ecological consequences of human activities formerly regarded as harmless and previously determined ineligible for regulation. In 1892, certainly, it had not been demonstrated that the needs of future generations were menaced enough to require restraints on the non-criminal but deleterious physical activities of individuals or industries.

■ The regulations regarding open burning themselves are well designed to avoid unreasonable hardship. Starting with the proposition that smoke is an air contaminant as the statute states (10 V.S.A. § 352(1)), measures to eliminate it where it is not shown to be necessary are certainly supportable on public health grounds. Land fill dumps are purposeful attempts to avoid that kind of contamination, and the regulations forbid burning there unless some overwhelming necessity, as yet uncorrected, exists. This is reasonable regulation, and the people of the State of Vermont, or their neighbors, are not required to be burdened with polluted air to any measure, if the burning is unnecessary. Combustion byproducts are so seldom attractive air additives that the burden must be on the burner to establish their harmlessness.

■ It is also to be noted that the defendant is a municipal corporation, a creature of the state. It is not a business being destroyed, it is not an operation for profit that is under prohibition. The right of the state to control air pollution activities of municipal corporations is, if anything, greater than its authority over others.

It is appropriate to point out that the actions taken by the board in this case amount to no more than specifically regulating the manner of operating the Waterbury dump. It is our view of the authorizing statute that, if the board saw fit, and followed the prescribed procedures, such regulations could be made generally applicable to all municipal dumps. See 10 V.S.A. § 358. In sort, the presence of a "violation" is significant only insofar as the regulatory order was made applicable to Waterbury.

The defendant complains that its requests for continuance and for discovery were not honored. Statutorily, discovery in civil matters is demandable as a matter of right only in proceedings pending in county courts, courts of chancery or municipal (now district) courts. 12 V.S.A. § 1231. *Walker* v. *Walker,* 124 Vt. 176, 177, 200 A.2d 271 (1964); *State Highway Board* v. *Shepard,* 127 Vt. 525, 527, 253 A.2d 155 (1969). Contrary to defendant's claim, they are not included within the "rules of evidence" of the county court made applicable in administrative proceedings by 3 V.S.A. § 810(1). This is not to say that it is beyond the power of an administrative agency, on proper application, to allow discovery as a discretionary matter. The granting of a continuance is likewise a discretionary matter, and, to support a claim of abuse of discretion, prejudice must be shown. It was, therefore, for the defendant to show that the denials in some substantive way handicapped its presentation.

This is not a case where criminal sanctions were sought to be imposed on account of a violation, such as in the manner provided under 10 V.S.A. § 367. Such an action would entitle the party complained against to resort to all of the requisite procedural privileges of a criminal respondent, with the burden on the prosecuting authority to meet the reasonable doubt measure of proof and observe constitutional standards applicable to criminal cases. *State* v. *Hall,* 96 Vt. 379, 381, 119 A. 884 (1923).

Here the proceeding involved only the imposition of preventive procedures, somewhat comparable to the situation in *Vermont Woolen Corp.* v. *Wackerman, supra,* 122 Vt. at 228. A criminal prosecution may never occur, given proper compliance with the standards of prevention ordered by the

board. It was within the discretionary authority of the board, given its preventive objectives, to expedite the hearing, so long as no prejudice took place. Certainly a thirteen day interval between service of the complaint and hearing is not so short as to be prejudicial as a matter of law. If, upon hearing, it was made to appear that the proper preparation had not been possible, or that additional witnesses, necessary to a full defense, could not be made to appear in the time prescribed, provision could, and, we expect, would, be made to enlarge the hearing, or re-open for further evidence. Such opportunities should be liberally allowed if requested, provided it can be done on terms and conditions that both preserve the rights of the defendant and protect public health and safety.

In this case, the record reports that the town presented all of its witnesses and asked for no further opportunity to introduce evidence. The issues in the case were uncomplicated: the existence of burning at the dump on April 1; and the extent of preventive and protective measures taken against such burning. The testimony and exhibits clearly evidenced the fire and smoke. The cause of the fire, which broke out on March 30, was stated by the operator of the bulldozer at the dump to be ignition of inflammable material by the exhaust of the bulldozer. Trash was left exposed because a shortage of covering material prevented adequate burial. The findings supporting the judgment order had ample grounding in the evidence, and the defendant did not demonstrate any prejudice resulting from the denial of discovery or continuance. *Jaqueth v. Guilford School District*, 123 Vt. 382, 383, 189 A.2d 558 (1963).

█ Two points remain for comment. Because a board member expressed impatience with the defendant's presentation with respect to its expenditures and activities relating to the dump, the defendant claims prejudice. Since the comments were clearly directed to the end of keeping the hearing on the road of relevance, we see no demonstration of bias such as to either disqualify the board member or defeat the result.

█ The town also complains that the board appeared to move precipitously to the complaint procedures without seeking a cooperative solution such as is referred to in the basic

enabling act. The choice of administrative remedies is part of the fundamental competence of the board. This Court cannot intrude itself into such decisions unless they are somehow clearly unlawful. This is not so in this case.

*Order affirmed.*

**Mr. Justice Shangraw** sat on this case, but, due to illness, took no part in the decision.