STATE OF VERMONT

| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| --- | --- |
| | Docket No. 103-9-16 Vtec |

| Morrisville Hydroelectric Project Water Quality | Decision on Motions |
| --- | --- |

The present appeal is from a water quality certification issued by the Agency of Natural Resources to Morrisville Water and Light for the Morrisville Hydroelectric Project located on the Lamoille River and its tributaries in northern central Vermont. Morrisville Water and Light appealed the certification to this Court. The matter presently before the Court is the Agency of Natural Resources' (ANR) motion for summary judgment on Questions 4, 7, 9, 10, 11, 12, 13 raised by Morrisville Water and Light (MWL).[1]

**Findings of Fact**

We recite the following factual findings solely for the purpose of ruling on the pending motion.

1.      On September 9, 2015, MWL submitted an application for water quality certification to ANR for hydroelectric facilities located on the Lamoille River and its tributaries (the Project).

2.      The Project consists of the Morrisville Facility, the Cadys Falls Facility, the Green River Facility, and the Lake Elmore Facility.

3.      On August 9, 2016, ANR issued a water quality certification to MWL with conditions regarding the Clean Water Act and the Vermont Water Quality Standards (VWQS).

4.      The Project does not affect any high-quality waters as defined by the VWQS.

---

[1] ANR has titled their motion as a motion for summary judgment. The motion, and ANR's reply to Morrisville's opposition, however, requests "summary dismissal" and summary judgment on Questions 4, 7, 9, 12, and 13. MWL asserts that this motion is actually a motion *in limine*, because in addition to requesting judgment on these questions, the motion seeks to preclude MWL from presenting certain evidence at trial. We decline to interpret the motion in this manner and instead read the motion in its entirety as a motion for summary judgment because ANR requests judgment on all questions.

5.      The Project additionally operates pursuant to a license issued by the Federal Energy Regulatory Commission (FERC), originally issued in 1981 (Project 2629).

6.      Pursuant to the FERC license, MWL is required, within five years from the date of issuance of the license, to "acquire title in fee with the right in perpetuity all lands, other than lands of the United States, necessary or appropriate for construction, maintenance, and operation of the Project."  MWL must also hold "all riparian or other rights that are necessary or appropriate in the operation or maintenance of the project."

7.      On March 30, 1999, the State of Vermont conveyed to MWL by warranty deed an interest in approximately 5,110 acres in the towns of Hyde Park and Eden, Vermont.

8.      Part of this conveyance included land "around (but not beneath)" the Green River Facility.

**Standard of Review**

The Court may grant summary judgment to a party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  V.R.C.P. 56(a), applicable here through V.R.E.C.P. 5(a)(2).  When determining if there is a genuine dispute as to any material fact, "we will accept as true the allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material."  Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356 (citation omitted).  The nonmoving party also receives the benefits of all reasonable doubts and inferences.  Id.

**Discussion**

I.      **Whether the Court's June 13, 2017 Decision precludes MWL from raising issues of practicability**

In a June 13, 2017 decision, we determined that "state and federal water quality laws do not authorize consideration of economic or social factors in this case."  In re Morrisville Hydroelectric Project Water Quality, No. 103-9-16, slip op. at 14 (Vt. Super. Ct. Envtl. Div. Jun. 13, 2017) (Walsh, J.).  This determination still stands and, therefore, any questions that directly raise social or economic considerations are not properly before the Court.

ANR asserts that Questions 4, 7, 9, 12, and 13 implicitly address social and economic concerns and, therefore, they are entitled to judgment pursuant to our June 13, 2017 decision.

2

MWL disagrees, arguing that these questions raise issues regarding practicability that are properly before the Court.

These questions do not explicitly ask whether social and economic factors should be considered.[2] As such, these questions address issues that are properly before the Court. To the extent that they implicitly raise these issues, the Court's June 13, 2017 determination remains in effect. For these reasons, ANR's motion for summary judgment on Questions 4, 7, 9, 12, and 13 is **DENIED**.

The Court looks forward to the parties' presentation of evidence on issues properly before us at trial. Nothing in this decision limits the parties' rights at trial to raise objections to evidence implicating social and economic considerations. The Court will rule on such evidentiary issues at that time.

## II. Whether MWL's deed prevents ANR from regulating the Project

Question 11 asks the Court to determine if ANR is estopped from imposing conditions on various aspects of the Green River Facility because of language included in MWL's deed from ANR. ANR now moves for judgment on this question claiming MWL's retention of private property rights cannot estop ANR from enforcing reasonable governmental regulation of the Project.

---

[2] The challenged questions read as follows:

Question 4: "[w]hether the bypass flow conditions for the Morrisville and Cady's Falls facilities are in excess of what is necessary to provide a "high quality aquatic habitat," pursuant to [the VWQS] § 3-04.A.1, and whether lower bypass flows would provide such habitat and meet all applicable requirements of the [VWQS], including considerations set forth in ANR Streamflow Procedure, Part E—Hydroelectric and Hydromechanical.

Question 7: "[w]hether ANR's condition requiring spilling water over the crest of the Morrisville and Cady's Falls dams for aesthetic purposes is appropriate, given the limited visibility to the public and the extreme difficulty of complying with this condition."

Question 9: "[w]hether the Water Quality Certification should be revised to specifically allow new flow and water level management conditions to be phased in over an extended period of time (10 years) to accommodate engineering design, permitting and construction improvements needed to implement new conditions."

Question 12: "[r]egarding the Green River facility, whether ANR failed to adequately consider the requirements of the Hydrology Criteria (VWQS § 3-01.C), the Class B Waters Management Objectives (VWQS § 3-04.A), and the Anti-Degradation Police (VWQS § 1-03) with respect to providing for adequate flows that fully support and maintain the use of the waters for boating, commercial activity (which includes hydroelectric power generation), and other recreation."

Question 13: "[f]or all facilities, whether less significant changes to existing operations, that result in less of a loss to renewable energy generation, would meet the [VWQS]."

3

The State, through ANR, conveyed to MWL by warranty deed a parcel of land in the towns of Hyde Park and Eden in 1999. MWL asserts that their deed precludes ANR from regulating the Project. The deed includes, in relevant part, a clause in which MWL retained the right to raise or lower the reservoir's water level and generally regulate the cycle of water.[3]

As a general matter, "all contracts entered into, all charters granted, all rights possessed and all property held are subject to the proper exercise of [the State's] police power, and must submit to its valid regulations and restrictions." Vermont Woolen Corp. v. Wackerman, 122 Vt. 219, 224 (1961) (citing State v. Quattropani, 99, Vt. 360, 363 (1926)).

We find no merit in the argument that the State, by conveying state-owned property to a private person or entity, can be precluded by the resulting deed from properly exercising its police powers in regulating the subject parcel. We conclude that any rights retained by MWL in an arm's length transaction with the State cannot preempt ANR's power to regulate the Project pursuant to the VWQS and its delegated authority to certify water quality under the Clean Water Act. We therefore, additionally conclude that we need not address the question of equitable estoppel.[4] ANR's motion for summary judgement on Question 11 is **GRANTED**.

III.    **Whether the Lake Elmore Facility is subject to the pending action**

Question 10 asks "[w]hether Lake Elmore should be removed from the Water Quality Certification as MWL does not currently draw down Lake Elmore for generation purposes and proposes to eliminate any draw down from Lake Elmore in the future." ANR's motion asks the Court to conclude we cannot remove Lake Elmore from the pending action.

---

[3] The Court notes that, to the extent this action seeks to address private property rights as set forth in the warranty deed, we are without jurisdiction to interpret private property rights. See Appeal of Yates and Leetle, No. 158-9-04 Vtec, slip op. at 3 (Vt. Envtl. Ct. May 4, 2005) (Durkin, J.).

[4] The parties have briefed this issue in the framework of equitable estoppel. Even if the Court applied the equitable estoppel factors, ANR would be entitled to judgment as a matter of law because, where a party asserts estoppel against the government, as in this case, the party must additionally demonstrate that "the injustice that would result from denying the estoppel outweighs the negative impact on public policy that would result from applying estoppel." In re Griffin, 2006 VT 75, ¶ 18, 180 Vt. 589 (mem.).

The Court concludes that the state has a strong public policy interest in enforcing environmental regulations and it's CWA delegated authority. Denying the estoppel claim would not result in an injustice that would outweigh this important public policy interest. Therefore, this is not one of the rare or extraordinary circumstances in which estoppel against the government should be recognized. See In re McDonald's Corp., 146 Vt. 380, 383 (1985).

We conclude, and the parties agree, that we are without jurisdiction to narrow the scope of the water quality certification application before the Court. For this reason, ANR's motion for summary judgment on Question 10 is **GRANTED** and the Lake Elmore Facility will not be removed from this action.

### Conclusion

For the foregoing reasons, ANR's Motion for Summary Judgment is **DENIED** as to Questions 4, 7, 9, 12, and 13 but **GRANTED** as to Questions 10 and 11.

Electronically signed on March 14, 2018 at 10:35 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division